Mr. Stain challenges both the conviction and the sentence in this case. Mr. Stain was charged by the government with a 6 count indictment, 3 counts of robbery, 2 counts under 924c for use of a firearm in the commission of a felony, and 1 general conspiracy count, which encompassed all the other 5 counts in the indictment. Now the government alleges in this case that Mr. Stain participated in 3 separate robberies during 2002 in Las Vegas, or in and around Las Vegas. One in March, the Speedway Casino robbery. One in April, the Wells Fargo Bank robbery. And another one in December, the Valley's Casino robbery. It looks, and we've read all of that of course, it looks as if the government thought your client brought a group together and planned 3 separate robberies, and that sort of framed the indictment, but that the proof at trial, it turned out that he planned with 3 essentially different groups of people for these 3 robberies. No one is contesting or suggesting that the proof at trial on the conspiracy theory was a little different from that charged in the indictment. That's where we are, isn't it? You're absolutely correct, your honor. The only common actor in all 3 of the robberies was Mr. Stain. And also, you're also correct, the government has conceded, in fact, that the indictment impromptu or incorrectly claimed that this was a common conspiracy involving all of the other counts alleged. And I guess we're down to whether the variance which the government concedes had the effect of amending the indictment or something less than that. If it amended the indictment, they may have some problems. If it didn't, then a different standard may apply. Can we start, why don't you tell us what facts were proven at trial that were not framed by the indictment? Well, it's very clear from the indictment, I mean, from the concession, that we're looking for a list. Oh, a list. I want you to tell the panel. You want the legal issues, your honor, or the facts? I want you to tell the panel what facts came out at trial that were not encompassed by the four corners of the indictment that would allow us to come to the conclusion that what really happened was the indictment was amended. The important factual difference between the proof at trial and what was alleged in the indictment was that there was never any agreement with Mr. Stain and anyone else to commit all five of those accounts. Well, that's something that didn't come out at trial. Was there anything that came out at trial that wasn't covered by the indictment? I believe what the Court is getting at is that whether you look at one conspiracy count, including all the claims, or you break it up into separate ones, you'd still end up with all the same factual proof at trial. Am I understanding the question correctly? Yes. And usually the problem with these cases is you've got co-defendants and evidence swashes in that wouldn't come in otherwise, but there was no co-defendant here. The only trial defendant was your client. And sometimes there's a problem with, well, what's part of the conspiracy? But in this case, the three separate instances are all things that your client was convicted of in various ways, so it's not a question about his guilt, for instance, with regard to the individual elements of the alleged overall conspiracy. It just turns out rather than being an overall conspiracy, it's arguable there were three separate conspiracies, one for each of the three offenses. So what went wrong with regard to the trial? Nothing seems to have come in that wouldn't have come in otherwise. Well, if I may, Your Honor, let me address the harmless error issue, because I believe that's what you're getting at, and that's certainly the primary argument of the government in this case with regard to the difference between the proof and what was alleged in the indictment. And I think when we're looking at whether or not there was harm here, we need to go back to the burger in the Kotiakis cases, the U.S. Supreme Court cases from the 30s and the Supreme Court cases from this court, and look at what it means to have prejudice from a single indictment that charges multiple conspiracies improperly. And I think what happened in this case that shows that there was harm was that you had the five individual counts for the three robberies and the two weapon counts, and once the jury decided or was allowed to decide based on the jury instruction which said you only have to find a conspiracy with regard to one of the alleged crimes, that you can then find them guilty of a conspiracy encompassing all the crimes, that that prejudiced Mr. Steen by allowing the jury to, in effect, skip through some of the elements of proof with regard to the individual substantive claims that there was. On that specific point, the record appeared to be clear that there was no objection to that instruction and no alternative proposed instruction on it, right? Well, there was an objection to the instruction. If we look at the record on pages, I believe it's around 148, 149, 138, 139 up to about one page 49, it's true that the objection could have been more artfully phrased to specify the problem with the difference between the indictment and the proof at trial, but it does talk about the problem with this being one count, as the government emphasized during the jury instruction discussions, and the potential spillover for the proof on, as the defense attorney argued, the 2924C counts, although I would argue that the spillover affected the other substantive robbery counts as well. So there was an objection. If we go through and reverse on count one, does that make a difference on the sentence? It makes, it would, it would make maybe a one point difference in the sentencing guideline calculations because of the grouping. I'm sorry, Your Honor, we're just talking about the conspiracy count? No, it would not make any difference on the sentencing guideline calculation. It was concurrent, wasn't it? It was the, it was concurrent with regard to the conspiracy. The conspiracy for the purpose of sentencing was grouped together with the substantive charges for each of the robberies. The two weapons charges, the 924 counts, were consecutive counts, one for seven years and the other for 25 years on top of the substantive counts. So you're right, just, just getting rid of the, or just reversing on the conspiracy count's not gonna make a difference here, and that's not what we're arguing as a remedy here. That's why we're arguing that the problem with the conspiracy count really affected the jury's deliberations with regard to all the substantive counts, including. That's what I'm having more trouble understanding because, I mean, if, if, if I had been acquitted of one of the episodes, the argument's easy to understand, but he was convicted on each of them. And what's missing with each of the, the substantive, the, the, the incident counts, the robbery counts? Oh, well, I, I think I can address that, Your Honor. I mean, what's missing with one, for example, with the Wells Fargo robbery, there's no evidence or very minimum contradictory evidence that there was ever any, um, intention, or, uh, on the part of Mr. Stain to participate in the Wells Fargo robbery. Um, using language from the PSI, that, that robbery was abandoned. As, as originally contemplated, that was supposed to be a robbery of the, um, the, uh, CalFed branch of another bank. There was a, a Nevada Highway Patrol officer, I guess, cashing a check in that branch so that robbery was aborted. Uh, Mr. Stain then got back in the van with the other, uh, co-conspirators, alleged co-conspirators, and, uh, went to Wells Fargo Bank where he was going to meet his girlfriend. Uh, while he was in the, in the Wells Fargo Bank, uh, meeting with his girlfriend, uh, Sobranus makes the call to then go in and rob the Wells Fargo Bank. Um, so tying that back to the conspiracy count, I think what, what there's a good chance the jury did in this case was figure, well, there's this overall conspiracy that we're allowed to find because we find there was a substantive violation on, on one of the substantive charges. We find him guilty. Uh, so we can then extrapolate that to each of the individual incidences and we don't really have to worry about whether Mr. Stain meant to participate in that robbery or not. That's one example. The other example is with regard to the weapons charges. Uh, for example, in the Speedway Casino robbery, the first robbery, uh, there, there's not really, there's no evidence that Mr. Stain ever gave the weapons to the people who actually, uh, conducted the robbery in that case. Uh, Mr. Ekins testified that he didn't get the gun from Stain. Flanders comes in on cross-examination. He testifies, well, it was the same guns that we used in Wells Fargo, uh, and Stain gave me the gun, but then, uh, in the van on the way there, but then it comes out that Stain drove separately. He wasn't in the van. But those are just some specific facts, Your Honor, if, uh, if I can point to some specifics. Didn't, uh, Holmes testify about two of the weapons used in that robbery? He identified two of the weapons as weapons that he had gone out shooting with Mr. Stain with, um, and that he sometimes on occasion left with Mr. Stain and, uh, uh, and that these were likely the same guns that were used in the first two crimes. And when he asked for them back, Stain said they'd been stolen? You're right, Your Honor. Yes. And then he identified them as the actual weapons? Right. The TEC-9 and the Taurus. Uh, have I answered your question, uh, Justice Clifton? Well, you've got the answer. I mean, you move to the sufficiency of evidence. Of course, that's a difficult standard to meet. And I guess I'm still not clear on why it is the inclusion of the conspiracy count confused the jury with regard to what evidence they had to find or what conclusions they had to reach with regard to the, each of the robberies. Let me do two things. First, let me point out that the jury in this case indicated that it actually was confused by what needed to be proved at this trial. They submitted a question to the court, um, at about 1238, uh, in the afternoon during their deliberations, uh, asking for some, some clarification of the conspiracy, um, jury instruction.  Why does that go to count one? I mean, that's... Why doesn't that note just go to your challenge to count one as opposed to the substantive counts? Oh, no, Your Honor. It does go to the substantive counts. That's, that's my point. Um, the jury's confusion... Well, does it have to be forever count? Can Mr. Stain be guilty on one count and not on others? I guess your, your argument is that they're, you're, they're talking about the substantive counts, but it's labeled conspiracy. I'm not saying that the jury there was specifically referring to the substantive counts, Your Honor. What I'm suggest, suggesting is by allowing the jury to find an overarching conspiracy involving all three of the robberies and all of the counts, um, even though there was not an overarching conspiracy as conceded by the government, what that allowed the jury then to do is go ahead and find automatically that all of the substantive counts were included whether or not, um, Mr. Stain meaningfully participated in them or not. What I'm talking about is the effect of the error with regard to the indictment, um, and the jury instruction on it, it's, it's effect on the, the rest of the trial and the deliberations. And if I just, real briefly, if I can just read from Kodiakos just for a brief moment, um, but if one cannot say with fair assurance after pondering all that happened without stripping the erroneous action from the whole, and here we're talking about a conspiracy charge that was similar in this case, can't say that the judgment was not substantially swayed by the error. It is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, which is the government's argument, um, whether there was, uh, apart from the phase affected by the error, it is rather even so, whether the error itself had substantial influence if so, or if one is left in great doubt, the conviction cannot stand what we're suggesting in this case is that the error with regard to the conspiracy and allowing the jury to find one overarching conspiracy when there wasn't one without requiring that they find a conspiracy on each of the separate counts of robberies, uh, that that had an influence on their deliberations as a whole. Um, I don't have a lot of time left. If I may, I'd like to reserve the rest of my time. You certainly can. Thank you. Your argument for her from the government at this time, Mr. Elman, good morning, your honor. May it please the court. Robert Elman for the United States. Uh, judge Hawkins, you asked whether there were any facts proven that were not encompassed by the indictment. And the answer to that is no. Um, there were none identified because there were none. Uh, I do not understand how the instruction on the conspiracy count or the conspiracy count itself somehow enabled the jury to quote, skip through the elements, unquote, of the substantive crimes. The government concedes that there was a charging error with respect to count one, because there was more than one conspiracy. That leads to this question. Surely the government, was it you who tried the case, your honor? Did you try the case? No, I did not. Surely the United States attorney's office in Nevada understood before this case went to trial that they were not dealing with a situation where Stain had met with the same group of people and planned three separate robberies, seriatim, um, and therefore that you could charge one conspiracy and three substantive counts because there were different people involved in these robberies, weren't there? Yes, there were, which is why I've conceded that it was more than one conspiracy. Why didn't your office seek a superseding indictment charging it correctly, for lack of a better expression? I don't know, your honor. I can't offer an answer. I'm simply not privy to what happened. Is it wrong for a panel of this court to expect the United States attorney to clean up things before they appear before a district court or before us? Of course not, your honor. And it should have been done. And I agree with you on that point. And unfortunately, I can't explain why it was not done. I only know that it was not. And that leaves this court and me in the unfortunate position of then having to determine whether this variance affects the conviction on the conspiracy count, which I am prepared to address. You don't care about the conviction on the conspiracy count. The proof certainly doesn't support it. And it doesn't make any difference on the sentence. Well, the proof does support the conspiracy count, your honor. The argument – It may be three conspiracy counts. It does. Perhaps Wells Fargo, which is a different matter, too. But, yes, taking what we all agree on, that it supports three separate conspiracies, not one as alleged. Well, the conspiracy conviction should stand because the attack on the conspiracy is that the government alleged one, while there was in fact more than one. However, under this court's case law, and under the United States Supreme Court case law, if there's unanimity on a single criminal object of a conspiracy, then the count stands regardless of extraneous proof. How do we know that the jury agreed on one conspiracy per all three conspiracies? Well, if you examine the way that the conspiracy was charged, and I refer you specifically to pages one and two of the excerpts of the record, you'll see that it sets forth as objects of the conspiracy all three bank robberies. It does. But you know, this is where the jury note becomes significant because it says conspiracy. Does it have to be for every count? Can Mr. Stain be guilty on one count and not on another? So obviously the jury was concerned about that. They were. And rightly so. If they had acquitted on one of the robberies, then it would beg the question of whether there was unanimity on an object of a conspiracy. However, they did convict through unanimous verdicts on all three of the robberies. So there has to have been unanimity. And I can refer you to it. Was there a Pinkerton instruction in this case? I believe there was. But I'm not certain enough. Your Honor, I probably shouldn't say that. In any event, where you have underlying convictions on the substantive counts, you necessarily have unanimity on an object of the conspiracy. And that cures the unanimity problem. The variance is addressed differently. And we've cited you to the factors at issue under United States v. Morse. And you examined three things. First, did the variance deprive the defendant of an opportunity to prepare his defense? And I think the answer to that is clearly no, because everything embraced in the indictment is coterminous with everything embraced by the government's proof of trial. So that's really not an issue here. The second is whether it deprived the defendant of the right to be tried only on charges that were presented to the grand jury. And, again, the answer is yes. There was no prejudice there. We have the three substantive robbery counts, the same body of proof, and the same preparation involved in order to defend a trial. And then, finally, you have prejudicial spillover. And that usually arises in the context of co-defendants, where you have one defendant who's involved in a conspiracy, but you have proof of a second conspiracy in which the defendant was not involved. And, in fact, that was the prejudice that was at issue in the Kodiakos case, which is referred to by the appellant here. But doesn't it make a difference in terms of the way you defend a case? If you're only defending one conspiracy, you can rest on the fact that there's no proof of an agreement of an overall conspiracy, and that's the necessary element. If you're defending three conspiracies, then you're going to attack the agreement as to each conspiracy, right? If there were no – I don't think that's right, Your Honor, in this instance because of the three substantive robbery counts. Well, I understand it would have practically a trial, but, I mean, it might want to affect the proof on whether or not you're going to talk about the agreement. How do you approach this case? Well, the government presented its proof of the defendant's agreement reached with the conspirators as to all three of these bank robberies. So, again, as simply put, Your Honor, in terms of a defense, you might well say, well, that's all well and good, but I'm going to rest on the fact that there's no overall agreement and not defend. I mean, that's a choice. Well, it would be significant. It may not be – it still may be a harmless error. You may win a harmless error analysis, but that's a different tactical question that the defense would have to answer. Well, I suppose it would have – I think the only thing a defendant can do is argue that, you know, in light of the three convictions, I don't see how he can argue that there was any differentiation in the way that he prepared and presented the case because the body of proof with respect to all three robberies involves the planning and preparation, and that's the evidence. What about the Wells Fargo one where they actually planned to run to the Wells Fargo Bank? Well, that's – so the Wells Fargo one, admittably, is a little different, but it was the defendant who directed the co-defendants to the Wells Fargo Bank when they aborted the attempt to rob the other bank. Yeah, he has a different theory on that, obviously. Well, the proof is what it is, and there is competent evidence that that's what happened. So he is, in fact, involved in that. But even before that, if the defendants in the Wells Fargo robbery are engaged in a plan to rob another bank, undertake overt acts to do that, and then change part of the conspiracy, specifically which bank they end up robbing, it's still a conspiracy. So I don't think that would really affect the outcome in this case in any event because it was the defendant who redirected them to the new bank in any case. Let me ask about a different subject, but it reflects back on this one. This is a little convoluted, but the one piece that gives me pause here is really triggered by the marijuana evidence, which I really wonder how it is the government thought that came in and pushed in pretty forcefully, which didn't seem to have much of anything to do with anything except to get marijuana into the case. And that's what gives me pause even back to the conspiracy-type problems. Because I'm sitting there. I tried cases, and trials are funny dynamics, and you try to get in whatever you can in front of the jury. And I'm not sure how the conspiracy count may have affected their determinations with regard to each of the episodes. But then I look at the marijuana evidence and say to myself, what possible real justification could there be for that? So although the marijuana piece is a small piece, it's the piece that has given me some pauses to the thing we've been talking about so far. So I would like you to address the marijuana evidence if you could, please. Certainly. Your Honor, the marijuana evidence tied together four of the conspirators in this case. Prince and Eakins sold marijuana together. Stain was one of Eakins' suppliers. Flanders sold marijuana for Stain. Flanders knew Prince because he would come by the apartment that Stain and Flanders shared and buy marijuana from them. Eakins met Stain through Prince, and Eakins met Flanders through Stain. That's the marijuana tie. But rarely when you – there wasn't much question about these people having dealings with each other. And you usually don't go into the back story about how, well, these guys met each other because he had worked at the same place and that guy was a high school classmate and so forth. In this case, there was a very conscious effort to work in the selling of marijuana. And frankly, I couldn't figure out how it advanced the government's case in an immaterial way. Some talk about, well, it shows that they wanted money because they were going to use it for this marijuana scheme. But usually motivation isn't a real issue in a bank robbery case because you take as a given everybody wants money and has some use for it. So what real purpose did the marijuana evidence serve for this case? The only purpose served by the marijuana evidence was demonstrating how these co-defendants came together in their conspiracy to rob the banks because that's how they all knew each other in the first instance. Usually evidence like that isn't presented in a vacuum. You don't simply start out with, you know, these three men were meeting at this apartment on this date. You know, you have to give the jury some sort of context for the evidence. If I can move beyond that to the prejudice aspect, I'd like to. And I'd like to point out first that, as I understand the argument, the prejudice arises because there's evidence of a crime apart from what's being charged in the indictment attributable to the defendant. A bad act. A bad act. Well, in the opening statement, the defendant's own attorney referred to the defendant's efforts to become a counterfeiter, which is obviously a felony, and he was going to use the attempts to counterfeit as part of his defense. Specifically, he was arguing to the jury that the defendant wasn't smart enough to be the mastermind of these robberies because he had fallen for a really awkward and obvious counterfeiting scam from someone from Nigeria where you put $20 bills into a bag and they come out as $100 bills. And he had brought the defendants together before one of these robberies in order to try and sell them on this counterfeiting scheme. So the defendant himself had introduced evidence of yet another crime. Well, a failed crime. He wasn't good enough to pull it off. Correct. Nevertheless, if the argument is that prejudice arises from the propensity to engage in crimes, then it's established by the defendant as well as the prosecutor. Secondly, there were at least three limiting instructions given to the use of the marijuana evidence. Both of the first two times it was referred to in testimony, the district court judge interrupted proceedings to give the jury a limiting instruction and cautioned them not to consider marijuana in purposes of proving the charged crimes. He also gave the standard 404B limiting instruction to the jury before they deliberated. Third, the evidence as to all three of these robberies is absolutely overwhelming. Barley's is the one that opposing counsel keeps pointing to, but that's an instance where the defendant and his co-defendant, who were the only two participants inside Barley's, were both wearing Silver State Disposal shirts during the robbery. The defendant worked for Silver State Disposal and had Silver State Disposal shirts, and they were wearing them when they returned to the apartment. And that's evidence not offered by a co-defendant but by a woman named Lenita Parker. Ms. Parker also observed the defendant giving Mr. Wilson, the co-defendant, a black 9-millimeter pistol in the apartment before the Barley's robbery. The security guard testified that the person who turned out to be Mr. Wilson pointed a black 9-millimeter pistol at his face when he demanded the money and forcibly took it away from him. The defendant was present at all three of these robberies while they were taking place, and yet argued mere presence. But the odds of that I can't even describe are infinitesimally small. It would be for a coincidence of that nature. Anything can happen in Vegas. They never stay there. The defendant supplied the guns for all three robberies. He's present at all three robberies. He planned all three robberies. The owner of the guns testified and identified the guns and also testified that they were last left in the defendant's possession before the first robbery. And those were the guns that were recovered from the van when police caught up with three of the co-defendants after the Wells Fargo robbery. So regardless whether that evidence of marijuana dealing was properly or improperly admitted, it cannot possibly have had any material effect on the verdict under this body of evidence. If we were to reverse on the conspiracy count, would there be any need for recensing? I don't believe so, Your Honor. All the other sentences would stand in that way and concurrent with three others. Thank you. Thank you. Rebuttal. Thank you, Your Honor. A couple of quick points. First of all, I do want to point out that with regard to objecting to the indictment, there was a motion following the close of the government's case for a judgment of acquittal on the grounds that the conspiracy count had not been proved. Again, I want to emphasize that just reversing on the conspiracy count and saying that it wasn't harmless, that ignores the effect that having the conspiracy count in there may have had on the jury's deliberation with regard to the other substantive counts. Was there a break written instruction in it? I don't know, Your Honor. With regard to the marijuana evidence, the 404B issue that we have in the briefs, I didn't mean to give that short shrift. I just didn't have time to get to it. I think Your Honor is correct that there was absolutely no basis for having that evidence in this trial. The motive for robbery is profit. You don't need to show what the proceeds were going to be used for. It was totally superfluous, and I think we've argued it's prejudicial in this case. The significance of Bally's, there was a five-point weapons enhancement with regard to that count. That was the highest count under the grouping. It was the 29 points. The others I think were at most five points, so we are talking about a four-point swing in the sentencing guideline calculations if you were to reverse on the enhancement issue with regard to Bally's. With regard to Wells Fargo and the guns, I'll again point out, actually I don't know if I would point out, but the guns, it's in the briefs, the guns, of course, were recovered when the van was pulled over and the arrest was made. Mr. Stain was not in the van at that time. Thank you, Your Honor. Thank you for your argument. Thank both sides for their argument. The case just argued will be submitted for decision. We'll proceed to the last case on this morning's argument calendar, which is Bodine v. Draco.
judges: Hawkins, Thomas, Clifton